REUBEN L. NOCOS, ESQ. [SBN 238011]
Nocos Law Firm, A Professional Corporation
1900 S. Norfolk St., Ste. 350
San Mateo, CA 94403
Telephone # (650) 320-1747
rlnocos@nocoslaw.com

Attorneys for Plaintiff
ANNABELLA BRITTAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| ANNABELLA BRITTAIN Plaintiff, vs. INDYMAC BANK, FSB, et al. Defendants. | ) Case No.: 3:09-CV-02953-SC ) ) PLAINTIFF'S OPPOSITION TO ) DEFENDANT ONE WEST BANK, FSB'S ) MOTION TO DISMISS PLAINTIFF'S ) COMPLAINT ) ) ) ) ) ) |

## I.  INTRODUCTION

The Court is asked to determine, generally, whether Plaintiff's FAC satisfies the liberal federal pleading requirements.  Ms. Brittain will demonstrate that it does and requests that the court deny Defendant's Motion to Dismiss.  The FAC does not consist of generalizations and conclusory allegations, but simply offers a "short and plain statement" of Plaintiff's claims without unreasonably burdening the court with details unnecessary to state claims upon which relief can be granted.  The FAC puts Defendants on full notice of the claims against them.

## II.  LEGAL ARGUMENT

**A.  Plaintiff's FAC Satisfies the Federal Pleading Requirement.**

Pleadings in federal court should not be a substituted for discovery.  The pleading serves a limited purpose.  The first pleading of the Plaintiff, the complaint, serves the purpose to notify defendants of the existence of Plaintiff's grievances.  Thus, it is recognized that "[u]nder the

liberal pleading policies, a plaintiff need only give defendant fair notice of the claims against it. In this regard, motions under Rule 12(b)(6) are strongly disfavored and rarely granted.[1]

Pursuant to FRCP Rule 8, "Plaintiff needs to provide only a 'short and plain statement of the claim,' which Plaintiff has done with regard to each cause of action pled. A valid complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] Generally, notice pleading is all that is required.[3] Under notice pleading rule, the Plaintiff need only give the defendant fair notice of the Plaintiff's claim and the grounds upon which it rests.[4] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the Plaintiff.[5] The Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, has prompted some courts to reconsider the standard for deciding motions to dismiss under Rule 12(b)(6).[6] Plaintiff's claims are more than plausible as pled and therefore the motion should be denied.

It must also be stressed, that in *Twombly,* the Court did not do away with the notice pleading standards of *Rule 8* and more importantly, did not require the pleadings of specific facts. As one district court has observed:

The Court's forced retirement of *Conley v. Gibson's* "no set of facts" language does not change the fundamental command of *Rule 8* as to what a valid complaint must look like. Indeed,

---

[1] *Gillian v. Jamaica Dev. Corp.* (1997) 108 F.3d 246, 249.
[2] Fed. R. Civ. P. 8(a)
[3] *See Lombard's Inc. v. Prince Mfg., Inc.*, 753 F.2d 974 (11th Cir. 1985).
[4] *See Erickson v. Pardus* (2007) 127 S.Ct. 2197, 2200.
[5] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.* (1983)71 F.2d 989, 994-95; *see also Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc.* (1994) 40 F.3d 247, 251.
[6] *See, e.g., In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir.2007) ("Considerable uncertainty surrounds the breadth of . . . *Twombly*.") (citations and quotations omitted); *Igbal v. Hasty*, 490 F.3d 43, 157 (2d Cir.2007) (holding that *Twombly* does not require "a universal standard of heightened fact pleading, but rather a flexible 'plausibility standard'").

the Court made clear that it was not imposing a heightened pleading standard. *Twombly*, 550 U.S. at 570 ("We do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its, face.").[7] As the court recently explained in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has a facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than sheer possibility that a defendant acted unlawfully.[8]

In applying *Twombly*, in *Watt v. Florida Int'l Univ.* (2007) 495 F.3d 1289, the Eleventh Circuit stated that the Supreme Court's most recent formulation of the pleading standard provides that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element.[9] It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."[10]

Thus, the question that must be addressed is whether Plaintiff has alleged enough factual material to suggest, raise a reasonable expectation of, and render plausible that Defendants should be held liable.  Here, Plaintiff realleged all previous paragraphs into each cause of action. Under a 12(b)(6) motion, the court must decide whether the facts alleged, if true, would entitle

---

[7] *CBT Flint Partners, LLC v. Goodmail Systems, Inc.*, 529 F.Supp.2d 1376, 1379 (N.D. Ga. 2007); *See also Hamilton v. Allen Bradely Co.*, 217 F.3d 1321 (11th Cir. 2000) ("Detail is not the bedrock on which a proper complaint stands.").
[8] *Ashcroft v. Iqbal*, at 1949 (2009).
[9] *Id.*
[10] *Watt v. Florida Intl. Univ.*, 495 F.3d 1289, 1295-96.

Plaintiff to some form of legal remedy. Unless the answer is unequivocally "no", the motion must be denied.[11] "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim"; *Hearn v. R.J. Reynolds Tobacco Co.* (D AZ 2003) 279 F. Supp.2d 1096. The Complaint, on its face, contains multiple grounds for relief based on the facts clearly pled. This is a point of "universal opposition," and is therefore intended to apply to each and every one of Defendants' arguments. Therefore, Defendant's motion must be denied.

### B. Fraud Is Properly Pled

Actively concealing or suppressing facts that cause a misrepresentation and/ or intentional misrepresentation of facts to an unsuspecting Plaintiff is actionable for Fraud tort. The essential facts of the misrepresentation and concealment fraud claims of the instant case, as plainly annotated in the FAC, are: the document presented to the Plaintiff as the Deed of Trust is not the document it is purported to be; essential payment terms were obfuscated in that document called "Deed of Trust"; on the loan application for the subject property Plaintiff's gross income was fabricated and inflated to meet the amount of the loan, not illustrate income reality; the loan sold to the Plaintiff was ill-fitted, more benefited the lender than the borrower, and was not in the best interest of the borrower.

Plaintiff, at the inception of the questionable loan, was merely a consumer-borrower without reason to suspect she was not being told the truth. She detrimentally relied on the representations of the lending agents to act in their fiduciary capacity with good faith and forthrightness. It is now self-evident that the lending agents acted in bad faith, breaching both their specific fiduciary duty to the plaintiff, and the general simple business ethic of any honest

---

[11] *Conley v. Gibson* (1957) 355 US 41, 45-46; *De La Cruz v. Tormey* (9th Cir. 1978) 582 F2d 45, 48; *SEC v. Cross Fin'l Services, Inc.*(CD CA 1995).

business person of fair dealings, in their misrepresentation and concealment fraud that has harmed the Plaintiff-borrower. Had Plaintiff been made aware of any or all of these misrepresentations and concealments of the truth, she would not have entered into the loan. Her detrimental reliance on the above list of fraudulent acts of the Defendant persuaded plaintiff to act upon the loan they peddled through their shell-game to her, to her detriment.

Plaintiff does meet the fraud pleading requirements set forth in *Tarmann v. State Farm Mutual Auto Ins. Co.* (1991) 2 Cal.App.4th 153 with the allegations alleged in paragraphs 23 through 29 of the First Amended Complaint. Plaintiff alleges facts that demonstrate that Defendant knowingly benefited from the fraud. "One who accepts the fruits of a fraud, with knowledge of the misrepresentations or concealments by which the fraud was perpetrated, thereby inferentially ratifies the fraud complained of and will be liable therefore, even though he did not personally participate in the fraud…"[12]

It is recognized, that in corporate fraud actions, "plaintiffs will not have personal knowledge of all the underlying facts … [and] the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded."[13] This is because "[i]nstances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual."[14] Defendants herein are in a better position than Plaintiff to identify the particular individuals in their corporations who were involved with Plaintiff's loan and who would have been in a position to make the misrepresentations. Accordingly, Plaintiff meets the particularity requirements through the misrepresentations.

---

[12] *McClung v. Watt; et al.*, 190 Cal. 155, 161.
[13] *Moore v. Kayport Package Express, Inc.* (1989) 885 F.2d 531, 540.
[14] *Ibid.*

Plaintiff's Opposition to Motion to Dismiss First Amended Complaint

Moreover, Plaintiff has not had the benefit of formal discovery. Thus, it would be unfair to impose such a high standard of particularity when Plaintiffs have not been allowed to access Defendants' internal documents. Finally, Plaintiff alleging fraudulent concealment should not be dismissed because "[they]will not be able to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim."[15] As a result "[b]ecause such a plaintiff is alleging a failure to act instead of an affirmative act, … a fraud by omission or fraud by concealment claim 'can succeed' without the same level of specificity required by a normal fraud claim.'"[16] Plaintiff's premised on fraudulent concealment theory are sufficient under Rule 9(b) because "[they] identify[y] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."[17]

### C. Plaintiff's Errantly Attempts to Apply the California "Tender Rule"

Defendants invoke the "Tender Rule" against Plaintiff, asserting that Plaintiff must tender the amount owed to have standing to sue in this matter. However, the tender requirement is not absolute where it would be inequitable to do so.[18] An offer to restore is not required in an action to void an instrument or contract.[19] "Where one claims a fraud was practiced on him by securing his signature to a writing which was in reality a deed of which he had no knowledge, and which he never agreed to make at all, he may cancel the deed without returning sums expended by defendant since they were not the fruit of the deed since no deed had been contracted."[20] It is also well-established that a court may exercise its equitable discretion to modify the rescission process to, allow rescission in the absence of a showing that a party can make tender.[21]

---

[15] *Portney v. CIBA Vision Corp.* (C.D. Cal. Dec. 24, 2008) NO. 07, 2008 WL 55055518, at 7 (quoting *Falk v. Gen. Motors Corp.* 496 F. Supp.2d 088, 1098-1099).
[16] *Portney* at 7 (quoting *Falk* at 1099).
[17] *Neubronner v. Milken* (9th Cir. 1993) 6 F.3d 666, 671-72; *Gottreich v. S.F. Inv. Corp* (9th Cir. 1977) 552 F.2d 866.
[18] *Onofrio v. Rice* (1997), 55 C.A.4th 413, 424.
[19] *Smith v. Williams* (1961) 55 Cal.2d 617, 621.
[20] *Fleming v. Kagan* (1961) 189 Cal.App.2d 791, 797 (citing *Burt* v. *Burt*, 145 Ga. 865).
[21] *Boles v. Merscorp, Inc.*, No. 08-1989, 2008 WL 5272196, at *2 (C.D. Cal. Dec. 12, 2008) (citing Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir. 1974)); see Yamamoto v. Bank of N.Y., 329 F.3d 1167,

Here, Plaintiff is asserting a void contract because there was fraud in the execution. Accordingly, tender is not required. The Plaintiff alleges facts that support the argument that the instruments at issue regarding the sale of the home in question to Plaintiff, namely the Promissory Note and Deed of Trust are *void* as the result of Defendant's fraudulent concealment of true payment terms and in fact willfully and maliciously obfuscated extra payment terms burdening the plaintiff in a document mislabeled "Deed of Trust".

Defendants also argue that Plaintiff "must offer to restore to the defendant everything of value which the Plaintiff has received ..." before the Court should grant the relief requested. *Ebbert v. Mercantile Trust Co.* (1931) 213 Cal. 496, 499, 501.[22] However, whether or not plaintiff is currently in default on the loans in question, should not affect plaintiff's claim for cancellation to the extent that this claim is premised on fraud. If the very source of plaintiff's obligation to make payments was fraudulent, the failure of plaintiff to comply with an agreement procured by fraud cannot bar her claim for cancellation. As one California court explained,

> Undoubtedly, the general rule is that rescission cannot be had unless the party demanding it can and does restore the other party to status quo. . . . That theory has no application here. . . . Rather, [plaintiffs] seek to recover from the defrauding defendants all that remains salvageable of the original consideration given by [them] . . . .[23]

Thus, the Tender Rule, as plead by Defendant, should not apply and the Motion to Dismiss should be denied.

### D. Void Contract and Cancellation of Deed of Trust is Appropriate

A void contract is invalid or unlawful from its inception. It is a "mere nullity, and incapable of confirmation or ratification." Black's Law Dictionary at 1573 (6th ed 1990). Thus, a void contract, also known as a void agreement, is not actually a contract and is deemed at Law never to have existed. A void contract cannot be enforced by law where the subject matter of the agreement is not legally binding. An agreement is said to be "void ab initio" if it has at no time

---

1173 (9th Cir. 2003) (Decision lies within the court's equitable discretion, taking into consideration all circumstances including the nature of the violations and the borrower's ability to repay the proceeds.).
[22] *See* Defendants' Motion to Dismiss (MTD) p. 7, lines 24-26.
[23] Farina v. Bevilacqua, 192 Cal. App. 2d 681, 684-85 (1961) (citations omitted).

had any legal validity.  California courts routinely find there is no contract (i.e. a Void Contract) where there is not a "meeting of the minds" in agreement.  California. Civil Code § 1580; *Beard v. Goodrich* (2003) 110 Cal. App. 4th 1031, 1049.

Essential contract law, of course, requires that there must be the above mentioned "meeting of the minds" of the parties to the agreement on all the essential elements of the contract.  Yet how can there have been any "meeting of the minds" when the party with the superior bargaining power and superior knowledge of the instruments of the agreement, concealed essential terms from the Plaintiff, even to the point of hiding payment terms in an instrument falsely called "Deed of Trust"?  The answer must be, there can not be such a "meeting of the minds" under such nefarious circumstances and hence, no agreement.  Such a circumstance that gives rise to a conclusion of "no agreement" is a Void Contract and both the "contact and "Deed of Trust" are invalid by their fraudulent nature.

Defendants perpetrated fraud regarding the loan transaction. To obtain Plaintiff's signature upon the Deed of Trust, defendants represented to Plaintiff she was signing a deed of trust but instead, Plaintiff was signing an addendum to the Promissory Note, rendering Plaintiff's signature upon the Deed of Trust, fraud in the execution.  Defendants also represented to Plaintiff the Promissory Note was a note when it was not a true note since not all material payment terms were contained within the Promissory Note and any documents labeled as an addenda to the Promissory Note.

### 1. *Plaintiff's Signature on the Deed and Note Constitutes Fraud in the Execution.*

A detailed review of the Deed of Trust and the law shows the merits of Plaintiff's contention that signing the Deed of Trust and Promissory Note constitutes fraud in the execution, rendering both Deed of Trust and Promissory Note void *ab initio*.  This contention is made because the document labeled as a Deed of Trust does not do what deeds of trust are created to do as set forth below.

A trust deed may be defined as an instrument, absolute in form, whereby property is conveyed to one--whether a third person or the creditor--called a trustee, for the purpose of securing a debt or other obligation owing from the grantor to another, or an obligation owing from a person to the grantor or another, with a power of sale upon default, and upon a trust to apply the net proceeds to payment of the debt and to pay over the surplus to the grantor.[24]  A

---

[24] *Bank of Italy Nat. Trust & Savings Ass'n* 4 P.2d 546, 549

deed of trust is a conveyance in trust to secure an indebtedness or charge against the trust estate, the property conveyed, with power of sale vested in the trustee to sell according to the terms of the trust set forth in the instrument. The parties necessary are a trustor or grantor, trustee and beneficiary.[25] Generally, a deed of trust creates a triparte relationship between the trustor (debtor/borrower), the trustee, and the beneficiary (creditor). Under such an arrangement the ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to the execution of the trust.[26] A mortgage or deed of trust secures the debt and not the note which evidences it.[27]

Here, the document labeled as a "deed of trust," the Deed of Trust, does not create a "triparte" relationship between the trustor (Plaintiff), the trustee, and the beneficiary (IndyMac Bank, FSB – now ONEWEST). Instead, the Deed of Trust attempts to create a "triparte" relationship between Plaintiff, the trustee, and MERS. Therefore, the Deed of Trust does not create a triparte relationship between the proper parties, and thus, is not a deed of trust. Plaintiff signed the Deed of Trust under the representation that the Deed of Trust secured the Promissory Note for the beneficiary; ONEWEST and MERS concealed from Plaintiff the fact the Deed of Trust did not secure the Promissory Note for the beneficiary, and such acts by ONEWEST AND MERS were made in order to obtain Plaintiff's signature upon the Deed of Trust and Promissory Note.

MERS is also not a true beneficiary which has a right to payment. MERS is not in the business of holding promissory notes. Its business is only to hold deeds of trust as an agent for the holder of the note. This status for MERS is disclosed in the deed of trust here at issue, which states that MERS is "acting solely as a nominee [a type of agent] for lender and lender's successors and assigns." In addition, there is no evidence before the court as to who is the holder of the promissory note and is entitled to enforce it. However, MERS does not purport to be the holder of the promissory note. Under California law, only the holder of a note is entitled to

---

[25] *Savings & Loan Soc. v. Burnett*, 106 Cal. 514; *Duncan v. Wolfer, 60 Cal. App. 120*; *The La Arcada Company v. Bank of America* (1932) 120 Cal.App. 397, 398
[26] *Phillip Lupertino v. John M. Carbahal* (1973) 35 Cal.App.3d 742, 747-748.
[27] *Schwerin v. Shostak,* 213 Cal.App.2d 37, 42; *Dool v. First Nat. Bank,* 107 Cal.App. 585, 588; *Clarence E. Matthews v. A. F. Hinton, As Trustee, etc.* (1965) 234 Cal.App.2d 736, 741-742; 44 Cal.Rptr. 692.

enforce it (with minor exceptions not relevant herein). *See* Cal. Com. Code §3301.[28]

As for the Promissory Note, the Promissory Note and all addenda to the Promissory Note did not contain all the payment terms for the loan, and therefore, the Promissory Note was not a note. Defendants concealed this fact from Plaintiff, and misrepresented to Plaintiff that the Promissory Note was a note in order to obtain his signature upon the Promissory Note.

Since the Deed of Trust is not a deed of trust and instead, contains substantial payment terms, the Deed of Trust is an addendum to the Promissory Note. The payment terms are contrary to the definition of a deed of trust defined by the above authorities: a deed of trust is to convey into the trust to secure an indebtedness or charge against the trust estate. Plaintiff did not know the Deed of Trust contained substantial payment terms. Plaintiff would not have agreed to some of those terms, and Plaintiff would have never agreed to allow MERS, an entity that did not possess an interest in the loan transaction the right to foreclose. Defendants did not disclose to Plaintiff the Deed of Trust contained such payment terms and someone other than the holder of the note had the right to foreclose in order to secure Plaintiff's signature upon the documents.

### 2. *MERS's Activities in California are Illegal*

MERS is transacting intrastate business in California. MERS is a Delaware corporation not licensed to do business in the state of California. Under Califrnia law, MERS is a foreign corporation (*Cal. Corp. Code §§ 167, 171*). Foreign corporatios are required to obtain a certificate of qualification from the Secretary of State before they "transact intrastate business." (*Cal. Corp. Code § 2105(a)*) MERS is not exempt from registration as a Foreign Corporation in California because of an exemption to that rule for those who engage in the creation of "evidences of debt or mortgages, liens or security interests on real or personal property".

However, MERS does more than just create evidences of debt…" MERS is in the business of selling membership *services* to thousands of California member-companies through a

---

[28] *In Re Vargas* [Case No.: LA08-17036SB, entered Oct 22, 2008]

program called "MERS Residential."[29]  When you become a member of "MERS Residential" you are offered many benefits such as reduced paperwork, saving time and money. It has nothing to do with being a loan maker and has everything to with offering time and money saving services for those who sign up as members.  This service plan certainly is outside the exemption criteria of *the creation of "evidences of debt or mortgages, liens or security interests on real or personal property"* Plaintiff's assertion is further buttressed by *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking* 270 Neb. 529, attached as **Exhibit A** to Plaintiffs' Request for Judicial Notice where MERS's counsel asserted that they sell memberships.

Consequently, since MERS is unregistered as a Foreign Corporation – offering time and money saving services to California corporations --  it is *not* exempt from being required to register as a Foreign Corporation operating in California.  Being unregistered they are operating illegally in California.

### E. Wrongful Foreclosure Under 2923.5  is an Appropriate Cause of Action

#### 1. *Opposition To Defendant's Pleading No Private Right of Action and Defendant's Legislative Intent Conjecture*

The irony of defendant citing a statute that is clearly a legislative encouragement for lenders to find more reasonable loan modification solutions for distressed mortgagees, rather than swooping down and displacing homeowners as the Defendant is attempting with Plaintiff, would be laughable if not so discouraging.   On September 8, 2008, the California legislature passed into law Civil Code §§ 2923.5.  The intent of the Legislature of those legal provisions is in the language of the bill that became law: "It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure." (Senate Bill 1137, § (D), Chaptered into law including Civil Code

---

[29] *See* "MERS Residential Membership Kit 2009," available on the MERS website: http://www.mersinc.org/membership/WinZip/residentialmembershipkit2009.pdf

§2923.5). Suffice it to say, this instant case may not even be before this court had only Defendants taken the high road and acted in the spirit of Civil Code §2923.5.

Nonetheless, Defendants themselves admit in their pleading that the provisions of Civil Code §§ 2923.5 have no actual application to the instant case, despite their long pontification of opinion about the law, because these provisions are enacted after Defendant's actions against the plaintiff. Furthermore, while some desperate defense counsel have argued Civil Code § 2923.5 does not provide a private right of action for borrowers, *there is no case law* that they can cite to support their position**.**

### 2. *Opposition to Defendant's HOLA Conclusion*

Plaintiff agrees that HOLA authorized OTS with the authority to issue regulations governing federally-chartered banks and that pursuant to that authority the OTS promulgated 12 C.F.R. §560.2 which expressly or federal preemption of state law "purporting to regulate" federal savings associations.[30] Plaintiff *disagrees* that §560.2 expressly preempts all state laws purporting to challenge the lender's misconduct simply because it is a federally-charted bank. 12 C.F.R. §560.2 (c) lists state laws that are not preempted. Included among those listed are: (1) contract and commercial law; (2) real property law; (3) tort law; and (4) any other law that OTS finds "[e]ither has only an incidental effect on lending operations or not otherwise contrary to purposes express in paragraph (a) of this section." *See* 12 C.F.R. §560.2. Plaintiff maintains that the laws governing Defendant's misconduct herein are not expressly preempted.

Plaintiff's claims are founded upon fraud. It has been held that actions for fraud are

---

[30] *See Fidelity Fed. Sav. & Loan Ass'n. v. dela Cuesta* (1982) 458 U.S. 141, 161.

governed almost exclusively by state law, and do not raise issues of great federal interest.[31] In addition, claims for fraud, negligent misrepresentation and unfair and deceptive business practices "do not in effect regulate[s] the [lending] 'operations' of a savings association."[32] Moreover, *Fenning* determined that "[t]here is no reason to suppose that Congress intended to preempt common law tort claims, effectively granting savings association's immunity from such state law claims." *Ibid*. In making this statement, it observed that a number of courts have agreed with this determination.[33] *Fenning* goes on to say:

> "And the Bank's argument that, by permitting fraud and unfair trade practices suits, the state is regulating the Bank's conduct, is off the mark. Plaintiff's ability to sue the Bank for fraud does not interfere with what the Bank may do, that is, how it may conduct its operations; it simply insists that the Bank cannot misrepresent how it operates, or employ fraudulent methods in its operations. Put another way, the state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive business practices."

*Fenning*, 40 Cal.App.4th at 1298.

In the same way, Plaintiff's ability to allege its fraud claims does not interfere with what Defendant may do or conduct its operation. Plaintiff merely insists that Defendant cannot misrepresent how it operates or engage in fraudulent activities in its operations. Thus, the Court in permitting Plaintiff's claims does not dictate how Defendant can or cannot operate, but it can insist that Defendant, in its operations, must be free from fraud and other deceptive practices.

**F. Wrongful Foreclosure Under 2924 is an Appropriate Cause of Action**

---

[31] *See Siegel v. American Savings & Loan Ass'n* (1989) 210 Cal.App.3d 953, 962.
[32] *Fenning v. Glenfeld, Inc.* (1995) 40 Cal.App.4th 1285, 1298.
[33] *See, e.g.*, Honig v. Financial Corp. of America (1992) 6 Cal.App.4th 960, 965; *Hall v. Great Western Bank* (1991) 231 Cal.App.3d 713, 721-722, 282 Cal.Rptr. 640; *Siegel v. American Savings & Loan Assn.* (1989) 210 Cal.App.3d 953, 962, 258; *Flanagan v. Germania, F.A.* (8th Cir.1989) 872 F.2d 231, 234; *see also*, *Solorzano v. Superior Court* (1992) 10 Cal.App.4th 1135.)

The judicial trend has been to dismiss lawsuits filed to stop non-judicial foreclosures, ruling that the non-judicial foreclosure statutes occupy the field and as all inclusive of all the requirements and remedies in foreclosure proceedings. Indeed, as is well known by now California Civil Code §§ 2924 through 2924k provide "a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."[34] Notwithstanding, section 2924 is not exclusive. In *Alliance Mortgage Co. v. Rothwell*[35], the Supreme Court concluded that a lender who obtained the property with a full credit bid at a foreclosure sale was not precluded from suing a third party who had fraudulently induced it to make the loan. The court concluded that " 'the anti-deficiency laws were not intended to immunize wrongdoers from the consequences of their fraudulent acts' " and that, if the court applies a proper measure of damages, " 'fraud suits do not frustrate the anti-deficiency policies because there should be no double recovery for the beneficiary.'" [36]Likewise, in *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.*,[37] the court held that a junior lienor retains the right to recover damages from the trustee and the beneficiary of the foreclosing lien if material irregularities in the conduct of the foreclosure sale are present.[38] Thus, in looking past the comprehensive statutory framework, these other Courts also considered the policies advanced by the statutory scheme, and whether those policies would be frustrated by other laws.

Recently, in the case of *California Golf, L.L.C. v. Cooper*,[39] the Appellate Court held that the remedies of Section 2924h were not exclusive. Of greater importance is that the Appellate Court reversed the lower court and specifically held that provisions in UCC Article 3 were allowed in the foreclosure context:

> Considering the policy interests advanced by the statutory scheme governing nonjudicial foreclosure sales, and the policy interests advanced by Commercial Code section 3312, it is clear that allowing a remedy under the latter does not undermine

---

[34] *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1249–1250
[35] 10 Cal. 4th 1226, 1231 (1995)
[36] Id. at p. 1238.
[37] 72 Cal.App.4th 1111, 1121 (1999)
[38] *See also Melendrez v. D & I Investment, Inc.*, supra, 127 Cal.App.4th at pp. 1257–1258; Lo v. Jensen (2001) 88 Cal.App.4th 1093, 1095 [a trustee's sale tainted by fraud may be set aside].)
[39] 163 Cal. App. 4th 1053 (Cal. App. 2d Dist. 2008)

the former. Indeed, the two remedies are complementary and advance the same goals. The first two goals of the nonjudicial foreclosure statutes: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor and (2) to protect the debtor/trustor from a wrongful loss of the property, are not impacted by the decision that we reach. This case most certainly, however, involves the third policy interest: to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.

Being entitled to foreclose non-judicially under 2924 can only take place "after a breach of the obligation for which that mortgage or transfer is a security." Thus, 2924 by its own terms, looks outside of the statute to the actual obligation to see if there was a breach, and if the note is unenforceable under Article 3, there can simply be no breach. Accordingly, if possession of the Promissory Note and Deed of Trust was not obtained until after the notice of sale was recorded, it is impossible to trigger 2924, and mere compliance with the notice requirements in under 2924 does not suddenly bless the damaging actions of the unknown foreclosing entity. Plaintiff has alleged that there is no transparency in the non-judicial process with regard to the unrecorded or untimely recording by the Defendants of the instruments giving them authority to initiate foreclosure. Accordingly, while there is a "comprehensive" statute regulating non-judicial foreclosures, the party with authority to foreclose can invoke it. However, if the party appearing is suspect, then the benefits of the "comprehensive statute" cannot be reaped without further judicial scrutiny. Defendant is looking for that "blessing" from the court, yet they fail under all three prongs of section 2924 as is clearly pled in the FAC.

**G. Setting Aside Trustee's Sale And Void And Cancel Trustee's Deed Upon Sale Are Appropriate Causes of Action**

Plaintiff's request to make Void and Cancel the Trustee's Sale of the subject property and to Void and Cancel the Trustee's Deed Upon that Sale is predicated on the tainted pedigree of the Deed of Trust of the subject property. As is properly plead in both the FAC, the Trustee's Deed of Trust is invalid because has no clear lineage – namely the true and proper holder in due course – and so the entitiy, whomever they may be, with the legal rights and responsibilities under that deed can not be identified. Plaintiff believes that even the Defendant themselves can not identify that true, proper and legal in holder in due course (and if that is a mistaken belief, then why have they withheld that information to date?). Thus Defendant acted upon the power

of that deed without having the standing and status to do so.  The chain of foreclosure events of the subject property of the instant case are invalid beginning with that void Deed of Trust, and that causes it all to fall like tipped dominos, the momentum from one breach collapses the next.

Furthermore, since the Deed, Notice of Default, and Notice of Trustee's Sale are Void, the Trustee's Sale should never have occurred since it was the Deed which conferred the power for the trustee's sale to occur.  Without the Deed, there is not power of sale.  Further, a trustee's sale cannot occur without first a Notice of Default and Notice of Trustee's Sale being recorded, but here, as alleged above, such instruments were void.

## CONCLUSION

For the reasons stated above, the motion to dismiss should be denied. However, if the Motion to Dismiss is granted, Plaintiff respectfully requests leave to amend. "The policy behind the rule concerning amendment of pleadings is to freely allow amendments unless the rights of the adverse party would be unduly prejudiced. . ." *Thompson v. New York Life Ins. Co.* (1991) 644 F.2d 439; *See* Fed. R. Civ. P. 15(a).

Dated:  January 14, 2010                     /s/ Reuben L. Nocos
                                             Reuben L. Nocos, Esq.
                                             Attorney for Plaintiff
                                             ANNABELLA BRITTAIN

Attestation Regarding Signature: This Document is being filed electronically under my User ID and Password. I have an original signed version of this document in my office files.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed January 14, 2010 in San Mateo, California